IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

Box v. Bimbo Bakeries USA

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

Angela L. Box, appellant,

v.

Bimbo Bakeries USA, appellee.

Filed October 10, 2023.    No. A-22-981.

Appeal from the Workers' Compensation Court: Daniel R. Fridrich, Judge. Affirmed.

Angela Box, pro se.

Kelsey J. Paumer and Kaitlyn J. Glaessmann, of Prentiss Grant, L.L.C., for appellee.

Bishop, Arterburn, and Welch, Judges.

Bishop, Judge.

## INTRODUCTION

Angela L. Box filed a petition in the Workers' Compensation Court seeking an award of benefits for an injury she claimed occurred during her employment with Bimbo Bakeries USA (Bimbo Bakeries). Following trial, the compensation court dismissed Box's petition. Box, pro se, appeals the court's order, challenging the court's finding that Box failed to meet her burden of proving a causal relationship between her injury and her employment with Bimbo Bakeries. We affirm.

## BACKGROUND

We initially note that the record on appeal does not contain a bill of exceptions. Therefore, the information set forth in this section is based upon the documents contained in the transcript. See *William P. v. Jamie P.*, 313 Neb. 378, 984 N.W.2d 285 (2023) (in absence of bill of exceptions, appellate court examines and considers only pleadings in conjunction with judgment reviewed).

- 1 -

On April 19, 2022, Box, pro se, filed a petition in the compensation court against Bimbo Bakeries, alleging that on January 12, 2020, she "sustained [a] personal injury in an accident arising out of and in the course of [her] employment by [Bimbo Bakeries], . . . for which injury [she was] entitled to compensation." She alleged that at the time of the injury, she was employed as a machine operator in a production line, when she experienced severe pain and numbness in her "hand and arm." As a result, she could not perform her job. She further alleged she "didn't receive any medical/health benefits or continued compensation . . . [and] was overlooked" because of the COVID-19 pandemic. She requested a hearing before the compensation court and asked that she be awarded any benefits to which she may be entitled. On May 17, Bimbo Bakeries filed an answer admitting that Box was its employee on January 12, 2020, but denying that she suffered any injury during her employment with Bimbo Bakeries.

Following a trial held in October 2022, the compensation court entered an order on November 21 dismissing Box's petition with prejudice. The court found that Box failed to meet her burden of proving she suffered an injury in an accident related to her work; specifically, it found that Box "failed to offer an expert medical opinion linking her injuries to her work at Bimbo Bakeries."

In its order, the compensation court summarized the evidence presented at trial, first describing Box's testimony. According to the court's order, Box testified that she began working for Bimbo Bakeries in 2018; this was her first job working in a production line. She did not have any problems with her right upper extremity prior to beginning the job. She was "the lead operator of the index machine, which cuts hot dog buns into two." Her job required her to "constantly twist her right wrist to straighten the buns" as they came down the production line for 40 to 50 hours per week.

According to the order, Box testified that she had seen two doctors in November 2019, because she had been experiencing various symptoms for 6 months, including "right wrist pain with numbness and tingling in her finger," "pain that radiated up her arm to her right shoulder," "leg pain," and "neck . . . and lumbar pain." At that time, she was diagnosed with "cervical and lumbar radiculopathies" and "prescribed cock-up wrist splints" to wear at night. She testified that "everything essentially came to a head on January 12, 2020," when the production line was running at a faster rate than usual due to the installation of new machinery. At the end of her shift, she experienced numbness in her right arm and chest pain, and her "body shut down." She called in sick for her following scheduled shift and went to an urgent care center. She believed "the condition would simply resolve itself," but realized this was not the case when "she started dropping items and had difficulty tying her shoes."

The compensation court also described various medical records received into evidence documenting Box's visits with various medical professionals regarding symptoms related to her right upper extremity. The court concluded that although "[t]here were a few statements in the medical records that were very close to meeting [Box's] burden of proof, . . . each fell just a little short." The court stated that the medical statements contained many of the same fatal flaws; they were not authored by a physician, constituted medical history, connected Box's injuries to her employment at Bimbo Bakeries using the word "appears" and were therefore not sufficiently definite, or were not signed by the authoring physician. The compensation court ultimately concluded that:

There is simply no medical opinion from a physician linking plaintiff's injuries to her work duties at Bimbo Bakeries. There were several office notes that came close to meeting her burden of proof, but each fell short as highlighted above. One might argue that the cumulative effect of each of those office notes ought to be enough to meet the plaintiff's burden of proof. That argument has some appeal to it, but upon thoughtful consideration, the Court answered that "argument" in the negative. After all, isn't the sum of $0 + 0 + 0$ still zero?

Accordingly, the compensation court dismissed Box's petition with prejudice.

Box appeals.

## ASSIGNMENTS OF ERROR

Box assigns that the compensation court erred in failing to find that (1) her injuries "occur[ed] on [the] premises of her employer" and (2) her "injuries occurred in the course of her employment with Bimbo Bakeries."

## STANDARD OF REVIEW

Pursuant to Neb. Rev. Stat. § 48-185 (Reissue 2021), an appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Spratt v. Crete Carrier Corp.*, 311 Neb. 262, 971 N.W.2d 335 (2022).

## ANALYSIS

The record on appeal does not contain a bill of exceptions. The responsibility for filing a bill of exceptions for appellate review rests with the appellant. See Neb. Rev. Stat. § 25-1140 (Reissue 2016). When there is no bill of exceptions, we examine and consider only the pleadings in conjunction with the judgment reviewed. See *William P. v. Jamie P.*, 313 Neb. 378, 984 N.W.2d 285 (2023). In the absence of a record of the evidence considered by the court, it is presumed on appeal that the evidence supports the trial court's orders and judgment. See *id.*

Neb. Ct. R. App. P. § 2-105 governs the procedure for making and preserving a record for appeal, as well as requesting a bill of exceptions. Under § 2-105, the appellant must file a request for a bill of exceptions at same time the notice of appeal is filed and failure to do so constitutes a waiver of the right to request a bill of exceptions, unless leave is granted by the appellate court to request the bill of exceptions out of time. See § 2-105(B)(2)(a). Generally, it is the responsibility of the requesting party to make a deposit with the clerk of the trial court within 7 days of receiving an estimate of the cost of preparing the bill of exceptions. See § 2-105(B)(4)(b) (we note the deadline for making the deposit for the bill of exceptions was previously 14 days; however, effective May 17, 2023, the deadline has been modified to 7 days after receiving an estimate of the cost of preparing the bill of exceptions). If the requestor fails to timely make the required deposit and the appellate court does not grant the requestor leave for good cause shown for an

extension of time to make the deposit, the appeal proceeds as if no bill of exceptions has been requested. See § 2-105(B)(4)(c).

Here, on December 21, 2022, Box simultaneously filed a notice of appeal and a request for a bill of exceptions. On December 23, Box filed a "Financial Affidavit" with the compensation court, indicating she was "unable to pay the docket fee, cost bond, and other costs of appeal." On December 27, the court entered an order, wherein it stated that it treated the "Financial Affidavit" as a "Request for Waiver of Payment." It denied Box's request, citing Neb. Rev. Stat. § 48-182 (Reissue 2021), which provides in relevant part that:

> The transcript and the bill of exceptions shall be paid for by the party ordering the same, except that upon the affidavit of any claimant for workers' compensation, filed with or before the [request for a bill of exceptions], that he or she is without means with which to pay and unable to secure such means, payment may, in the discretion of the compensation court, be waived as to such claimant and the bill of exceptions shall be paid for by the compensation court in the same manner as other compensation court expenses.

The court found that it had "no choice but to overrule [Box's] Financial Affidavit" since she filed it 2 days after, rather than "with or before," her request for a bill of exceptions.

On December 28, 2022, Box filed an "Affidavit and Application to Proceed Without Payment of Costs," in which she indicated she had no income or assets and was unable to pay the costs of appeal. On December 30, the compensation court entered an order denying Box's application to proceed in forma pauperis for the same reasons set forth in its December 27 order. Box did not appeal the court's denial of her application to proceed in forma pauperis. Since her application was denied, Box was required to make the deposit of the estimated cost of preparing the bill of exceptions. However, she failed to do so and no bill of exceptions is contained in the record before this court. As such, we must proceed as if no bill of exceptions was requested.

When there is no bill of exceptions, an appellate court examines and considers only the pleadings in conjunction with the judgment reviewed. See *William P. v. Jamie P., supra*. In the absence of a record of the evidence considered by the court, it is presumed on appeal that the evidence supports the trial court's orders and judgment. *Id*. Offering of a bill of exceptions is necessary if the appellate court is to consider errors assigned by the appellant which require a review of the evidence that was received by the tribunal from which the appeal is taken. *Id*. An appellant may not successfully assert that the evidence does not support a lower court's order when the record on appeal affirmatively demonstrates that sufficient evidence was considered by the lower court, with notice to and without objection by the appellant. See *id*.

Box argues that the compensation court erred in failing to find that her "injuries occurred while working at Bimbo Bakeries." Brief for appellant at 3. She states that prior to her employment with Bimbo Bakeries, she did not have weakness in her right hand, arm, and shoulder. However, at Bimbo Bakeries, she worked in a fast-paced environment which required her to engage in repetitive activities. She argues that these "daily tasks contributed to the extended overuse of her right hand and arm/shoulder, causing [her] pain and numbness" which worsened over time. *Id*. at 4.

The compensation court determined that although "[t]here were a few statements in the medical records that were very close to meeting [Box's] burden of proof, . . . each fell just a little

short." The court stated that the medical statements fell short for many of the same reasons; they were not authored by a physician, constituted medical history, connected Box's injuries to her employment at Bimbo Bakeries using the word "appears" and were therefore not sufficiently definite, or were not signed by the authoring physician. Since we lack a record of the evidence adduced and considered by the court, we are required to presume that the evidence supports the court's order dismissing Box's petition. See *William P. v. Jamie P., supra.*

CONCLUSION

For the foregoing reasons, we affirm the compensation court's November 21, 2022, order dismissing Box's petition with prejudice.

AFFIRMED.